IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION


GOLF SAVINGS BANK, a Washington
State Chartered Bank,

                    Plaintiff,

      v.

GEOFF WALSH, a Citizen of the State of
Oregon,

                  Defendant.

_____

Civ. No. 09-973-AC

OPINION AND
ORDER

ACOSTA, Magistrate Judge:

*Introduction*

     Plaintiff Golf Savings Bank ("Golf") filed a complaint against Defendant Geoff Walsh

("Walsh") alleging breach of contract and breach of fiduciary duty. Despite knowing Walsh's office

OPINION AND ORDER                 1                         {DEB}

address, Golf did not serve summons to Walsh within the 120-day deadline for service mandated by Federal Rule of Civil Procedure ("Rule") 4(m). Instead, Golf served Walsh only after this court issued an Order to Show Cause directing Golf to show good cause why process had not been served. Golf claims that it did not serve Walsh within the deadline because it wished to spare Walsh the professional embarrassment that would be caused by serving him at his office, and that it found no other way to serve him within the 120-day deadline.

Walsh moves to dismiss, claiming that Golf's wish to spare him embarrassment was not good cause. Golf argues that its desire to avoid embarrassing Walsh, coupled with its other attempts to locate him, constitute good cause under Rule 4(m).

The court finds that Golf's knowing decision to delay service did not constitute good cause, but did constitute excusable neglect. Golf acted in good faith, caused Walsh no prejudice, and caused no substantial delay or disruption of the judicial process. Therefore, Walsh's motion to dismiss is denied.

*Background*

Golf filed its complaint against Walsh on August 19, 2009. (Plaintiff's Complaint 1.) Golf alleged that Walsh, while employed as a senior vice president, breached his employment contract and his fiduciary duty by approving both unauthorized expenditures and loans that did not meet Golf's underwriting criteria. *Id.* at 3-5. Earlier, in January of 2009, Golf's counsel had sent Walsh a letter purporting to apprise him of the claims against him. (Weatherhead Declaration ("Decl.") 4:21.)

Golf first attempted to serve Walsh on September 1, 2009, when Golf's counsel contacted a process server to serve Walsh with a copy of the complaint, a summons, and related documents at

what Golf believed to be his home address. *Id.* at 2:4. But repeated efforts to serve Walsh at that address failed. *Id.* at 2:5-2:8.

Despite these difficulties, Golf's prospects for serving Walsh improved on October 8, 2009, when a paralegal employed by Golf's counsel found Walsh's photograph and work address. *Id.* at 2:8. Instead of having Walsh served at his office, however, Golf's counsel instructed the process server not to serve Walsh at his office. *Id.* at 2:9. Golf decided that Walsh had to be served either outside his office or at his home to avoid causing him professional embarrassment. *Id.* Golf's subsequent efforts to serve Walsh outside his office or at a home address failed. *Id.* at 2:9, 3:11, 3:13, 3:16. A second process server and a private investigator were unable to find Walsh's home address or vehicle registration, and were unable to catch sight of Walsh as he left his office. *Id.* On November 23, 2009, Golf's counsel again instructed a process server not to serve Walsh in his office. *Id.* at 3:15.

On December 17, 2009, 120 days had passed since Golf had filed the complaint. On January 22, 2010 the court issued an Order to Show Cause sua sponte, instructing Golf to show good cause why it had not effected service within Rule 4's deadline or have its complaint dismissed. (Order to Show Cause 1.) Golf then served Walsh at his office on February 4, 2010, forty-nine days after the Rule 4(m) deadline had passed. On February 16, by means of a document titled Status Report Re: Order to Show Cause, Golf explained to the court that it chose not to serve Walsh at his office in order to spare him professional embarrassment.

Walsh soon filed a motion to dismiss for Golf's failure to serve process within Rule 4(m)'s time limit, arguing that no good cause existed to excuse Golf's failure to effect service. Golf responded, explaining again that it did not want to embarrass Walsh, and claiming both that it acted

OPINION AND ORDER                        3                        {DEB}

diligently in trying to serve Walsh outside his office and that Walsh already knew that he would be sued. Thus, Golf argued, it had good cause for the delay of service. Walsh maintains that Golf's purported civility did not constitute good cause.

*Discussion*

This motion to dismiss requires the court to decide whether a delay in the service of process resulted from good cause or excusable neglect under Rule 4(m) when the plaintiff knowingly delayed service in order to spare the defendant embarrassment. The doctrines of good cause and excusable neglect are relevant to determine whether or not the reasons delaying service avoid dismissal under Rule 4(m).

I.      Applicable Standard

Rule 4(m)'s deadline for service is designed to force parties and their attorneys to be diligent in prosecuting their cause of action. *Fimbres v. United States*, 833 F.2d 138, 139 (9th Cir. 1987) (citing *Wei v. Hawaii*, 763 F.2d 370, 371 (9th Cir. 1985)). When plaintiffs fail to serve defendants within the time limit, they risk dismissal. FED. R. CIV. P. 4(m).

While the pre-1993 rule required dismissal absent a showing of good cause, the current version of the rule is more lenient. *Petrucelli v. Bohringer & Ratzinger*, 46 F.3d 1298, 1305 (3d Cir. 1995). The current version of Rule 4(m) reads as follows:

> If a defendant is not served within 120 days after the complaint is filed, the court – on motion or on its own after notice to the plaintiff – must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

FED. R. CIV. P. 4(m). Rule 4(m) thus offers two avenues of relief for plaintiffs who miss the service deadline: The rule mandates an extension of time for plaintiffs who show good cause, and allows

OPINION AND ORDER                    4                            {DEB}

a court to use its discretion to grant an extension of time even in the absence of good cause.  *Lemoge v. United States*, 587 F.3d 1188, 1198 (9th Cir. 2009).  In the absence of good cause a court may use its discretion to grant an extension of time where plaintiffs demonstrate excusable neglect.  *Id.*  Thus, a plaintiff can preserve her original filing date for a complaint by satisfying one of two standards: good cause or excusable neglect.  *Id.*

Yet while the *Lemoge* court described good cause and excusable neglect as two distinct standards, it also indicated that the two standards overlap.

> Good cause to avoid dismissal may be demonstrated by establishing, at minimum, excusable neglect.  In addition to excusable neglect, a plaintiff may be required to show the following factors to bring the excuse to a level of good cause:  "(a) the party to be served personally received actual notice of the lawsuit; (b) the defendant would suffer no prejudice; and (c) plaintiff would be severely prejudice if his complaint were dismissed."

*Id.* (quoting *Boudette v. Barnette*, 923 F.2d 754, 756 (9th Cir. 1991)).  The conflation of the two standards causes some confusion, and is perhaps due to the retention of language from *Boudette* that predates the 1993 amendment to Rule 4(m) that created the modern dual avenues of relief.  This court understands *Lemoge*'s interpretation of the current rule to mean that excusable neglect may be an element of good cause, but is by itself only sufficient to allow for a discretionary extension of time.  Excusable neglect can rise to the level of good cause and force a mandatory extension of time when accompanied by actual notice, lack of prejudice to the defendant, and severe prejudice to the plaintiff.

### A.    Good Cause

The court finds no good cause here.  When examining the instant case in light of the above factors, it becomes evident that dismissal would not prejudice Golf and that Walsh never had actual notice of the lawsuit.  Golf neither argues nor presents evidence that it would be prejudiced by

dismissal.  As for actual notice, Golf claims that its counsel sent Walsh a letter in January, 2009, "apprising him of Golf's claims." (Weatherhead Decl. 4:21.)  However, information about a lawsuit can only constitute notice if it is given to a defendant after the complaint has been filed and the action has been instituted.  *Singletary v. Pa. Dept. of Corr.*, 266 F.3d 186, 195 (3d Cir. 2001).  Therefore, the letter sent to Walsh more than six months before filing cannot constitute notice.  In the absence of actual notice and prejudice to Golf, the court finds that, even assuming Golf can demonstrate excusable neglect, it lacked good cause for its delay of service.  Thus, the court is under no mandate to preserve Golf's claim, but may only do so at its discretion upon a showing of excusable neglect.

B.    *Excusable Neglect*

Despite Golf's lack of good cause, it may preserve its complaint at the court's discretion by demonstrating excusable neglect.  To determine whether a plaintiff demonstrates excusable neglect, courts use the test set forth in *Pioneer Inv. Services Co. v. Brunswick Assoc. Ltd.*, 507 U.S. 380, 394 (1993), and *Briones v. Riviera Hotel & Casino*, 116 F.3d 379, 381 (9th Cir. 1997).  The *Pioneer-Briones* test is as follows:

> [T]he determination of whether neglect is excusable is an equitable one that depends on at least four factors: (1) the danger of prejudice to the opposing party; (2) the length of the delay and its potential impact on the proceedings, (3) the reason for the delay; and (4) whether the movant acted in good faith.

*Bateman v. U.S. Postal Service*, 231 F.3d 1220, 1223-1224 (9th  Cir. 2000).  While the *Pioneer-Briones* test is often applied in relation to motions for relief from judgment under Rule 60(b), it can also be used to establish excusable neglect under Rule 4(m).  *Lemoge*, 587 F.3d at 1198 (holding that plaintiff had established excusable neglect for the purposes of Rule 4(m) via the *Pioneer-Briones* test).  To adopt the *Pioneer-Briones* excusable neglect test to this case the court need only consider

the *Pioneer-Briones* factors in relation to Golf and Walsh, substituting the "movant" in the last factor for Golf, the plaintiff, here.

Golf can pass most of the *Pioneer-Briones* test without difficulty.  Walsh provides no arguments or evidence that he was somehow prejudiced by the delay in service, that the delay may potentially disrupt the proceedings, or that Golf did not act in good faith when it missed its deadline. However, the court must inquire further into the reason for delay and determine whether Golf's knowing decision not to serve Walsh at his office constituted an intentional delay of service.

### 1.    Intentional Delay

A plaintiff's intentional delay of service is considered inexcusable and leads to dismissal. *Fimbres*, 833 F.2d at 139.  In *Fimbres,* the plaintiffs intentionally delayed service for strategic purposes.  *Id.*  The Ninth Circuit declared that "intentional delay of service is more inexcusable than inadvertence."  *Id.*  The Fifth Circuit explained the reasoning behind this rule in *Redding v. Essex*, 752 F.2d 1077, 1078 (5th Cir. 1985).  There, the court admonished that plaintiffs should not be allowed to manipulate a court's docket or the defendant's right to receive the complaint against him. *Id. Fimbres* and *Redding* present a clear rule against the intentional delay of service, a rule based on judicial policy aimed at preventing strategic or manipulative delays.

However, while strategic or manipulative delay is labeled "intentional" and considered inexcusable, courts view good-faith delay differently, as explained in *TCI Group Life Ins. Plan v. Knoebber*, 244 F.3d 691 (9th Cir. 2001) (hereinafter "*TCI*").  In *TCI* the Ninth Circuit provided an extensive discussion of the term "intentional" when applied to the failure of parties to meet procedural deadlines.  *Id.* at 696-699.  The *TCI* court explained that when applying the concepts of good cause and excusable neglect, "intentional" does not have its normal everyday meaning. *Id.*  First, the court

OPINION AND ORDER                              7                                   {DEB}

noted that "intentional" often means "an act or omission taken by an actor knowing what the likely consequences will be." *Id.* at 697. The court then explained a critical distinction:

> [W]here "a party chooses to miss a deadline although for a very good reason," . . . [s]uch an omission is "intentional" in the usual sense of that term; that is, it is the result of a conscious choice. Nonetheless, it is "neglect" – that is "'giv[ing] little attention or respect'" to the [] deadline in light of other considerations – and the question becomes whether that "neglect" is "excusable" . . . .

*Id.* (quoting *Pioneer Inv. Services*, 507 US at 388) (third alteration in original) (internal citations omitted). The court further explained that its definition of "intentional" usually applied to conduct deemed "willful, deliberate, or evidence of bad faith." *TCI*, 244 F.2d at 697. But, when an actor knowingly misses a deadline but acts in good faith without any intention to prejudice the opposing party, manipulate the legal process, or interfere with judicial decision-making, the actor's delay is neglectful, but not intentional, and thus may be excusable. *Id.* at 697-698

For example, in *Bateman v. U.S. Postal Serv.*, 231 F.3d 1220 (9th Cir. 2000), an attorney left the country to deal with a family emergency and missed a deadline to answer a motion for summary judgment. *Id.* at 1223. The attorney knew of the deadline and failed to contact the court or opposing counsel, and his trip was "intentional" under any common understanding of the term. *Id.* Nevertheless, the Ninth Circuit noted that while "his reasons for the delay were weak, the delay was not the result of 'deviousness or willfulness.'" *TCI Group Life Ins. Plan,* 244 F.3d at 698 (quoting *Bateman*, at 1225.) After applying the *Pioneer-Briones* test, the court found excusable neglect. *Id.* The court concluded that "because the lawyer acted in good faith, without prejudice to the opposing party, and with minimal delay or impact on the judicial proceedings, his neglect was excusable." *Id.*

Here, there is no dispute that Golf acted in good faith and lacked any intention to prejudice Walsh. On the contrary, Golf tried to protect Walsh's reputation, a commendable display of

OPINION AND ORDER                    8                    {DEB}

professionalism, to be sure.  Therefore, Golf's actions, while "intentional," merely constituted neglect in the context of Golf's failure to meet its service deadline.  Because Golf acted in good faith, without prejudice to Walsh, and with minimal delay or impact on the judicial proceedings, its neglect was excusable and its complaint may be preserved at the court's discretion.

III.   Use of Discretion

Having found that Golf's actions constituted excusable neglect, the court finds that Golf's complaint is be preserved and its time for service extended up to the February 4, 2010, date of service.

*Conclusion*

For the reasons stated above, Walsh's motion to dismiss is DENIED.

DATED this 13th day of August, 2010.

_____/s/ John V. Acosta_____
JOHN V. ACOSTA
United States Magistrate Judge
